**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **DARREN BEANLAND** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 22-672-MAK |
| | : | |
| **FEDERAL EXPRESS CORPORATION** | : | |

### FINAL ORDER APPROVING CLASS ACTION SETTLEMENT, ATTORNEY'S FEES AND COSTS, AND <u>ENTERING JUDGMENT</u>

**AND NOW**, this 1st day of August 2023, upon considering the Class Representative's unopposed Motion for final approval of class action settlement (D.I. 92), unopposed Motion for attorney's fees and reimbursement of expenses (D.I. 82), unopposed Motion for service award (D.I. 78), supplemental briefing and Declarations supporting each Motion (D.I. 79, 80, 81, 83, 84, 85, 86, 87, 88, 89, 90, 91, 93, 94, 95, 96, 97, 98, 99), and after our extensive noticed Hearing on Final Approval (D.I. 70) where the Class Representative personally appeared travelling from Indiana but no other Class Members appeared, with no objections to the settlement, attorney's fees, costs, or service award or other relief, and upon clarifying the number of class members, agreements among Class Counsel regarding work expended by attorneys not approved as Class Counsel, and timely distribution of awards to the Class Members simultaneous with the payments of attorney's fees, costs, and a service award, and for reasons detailed on the record in open Court, it is **ORDERED** the Class Representative's unopposed Motion for final approval of class action settlement (D.I. 92), Motion for attorney's fees and reimbursement of expenses (D.I. 82), and Motion for payment of service award (D.I. 78) are **GRANTED** and **JUDGMENT** entered upon our findings:

*Findings of fair, adequate, and reasonable settlement.*

1.We have jurisdiction over the subject matter and over all parties under 28 U.S.C § 1331 and 38 U.S.C. § 4323(b)(3) including over all the Class Members following certification for settlement purposes.[1]

2.Aircraft mechanic and Air National Guard reservist Darren Beanland filed a class action complaint on May 23, 2022 against his employer Federal Express Corporation under the Uniformed Services Employment and Reemployment Rights Act ("USERRA").[2] He claims FedEx violated USERRA by not offering paid leave to its non-pilot employees taking short-term military leave but extended the benefit of paid leave to non-pilot employees taking leave for other, non-military reasons such as jury duty, bereavement leave, or sick leave.[3]

3.We held a Rule 16 conference and issued a Scheduling Order governing, among other issues, phased fact and expert discovery on class certification and to prepare for trial either on Mr. Beanland's individual claims or on behalf of a defined class; motions for class certification; and summary judgment.[4] Consistent with our Scheduling Order, the parties moved into discovery, including an agreement to streamline discovery by using documents produced in *Travers v.*

---

[1] Unless otherwise defined, all capitalized terms in this Order have the same meaning as in the March 1, 2023 Class Action Settlement Agreement and Proposed Plan of Allocation (D.I. 64–1, 64–2).

[2] 38 U.S.C. § 4316.

[3] D.I. 43. The parties stipulated to restricting the Class to claims for periods of military leave beginning on December 24, 2010. D.I. 42. This altered the claims period from October 10, 2004 as originally alleged in the Complaint. D.I. 1. FedEx modified its military leave policy as of October 31, 2020 to provide salaried, exempt employees taking military leave with full pay during workweeks in which they performed any work for FedEx.

[4] D.I. 38.

*Federal Express Corporation*, No. 29-6106 (E.D. Pa.).[5] The parties took additional discovery, including the deposition of Mr. Beanland, serving requests for production of documents and interrogatories, and producing data regarding the dates of military leave of members of the putative Class and FedEx policies governing the use of military leaves and other comparable leaves.

---

[5] FedEx courier Gerard Travers sued FedEx under USERRA in the United States District Court for the Eastern District of Pennsylvania. He sued before Mr. Beanland became involved. The same attorneys representing Mr. Beanland represented Mr. Travers in the Eastern District of Pennsylvania action. Mr. Travers brought the same claims as Mr. Beanland on behalf of himself and a class of FedEx employees alleging FedEx failed to pay its employees who take short-term military leave while paying employees who take leave for non-military reasons such jury duty, sick leave, and bereavement leave. *Travers*, No. 29-cv-6106 at ECF No. 1. FedEx moved to transfer venue to the United States District Court for the Western District of Tennessee (ECF No. 29) and moved to dismiss the complaint arguing USERRA did not require paid military leave and Mr. Travers's claim is barred by laches (ECF No. 30). We denied the Motion to transfer (ECF No. 41). We granted FedEx's Motion to dismiss concluding the "rights and benefits" guaranteed by USERRA excludes paid military leave. *Travers v. FedEx Corp.*, 473 F. Supp. 3d 421 (E.D. Pa. 2020). Our Court of Appeals found Mr. Travers stated a claim under USERRA. *Travers v. FedEx Corp.*, 8 F.4th 198 (3d Cir. 2021).

We denied FedEx's motion to dismiss the complaint on remand based on laches (ECF No. 64). We held a Rule 16 conference, issued a Scheduling Order, and the case proceeded into discovery. Mr. Travers's counsel joined Mr. Beanland, an Indiana citizen, as a named plaintiff and class representative (ECF No. 84). FedEx moved to dismiss Mr. Beanland's claim for lack of personal jurisdiction over FedEx in Pennsylvania. Mr. Beanland provided sworn testimony in the *Travers* case. We concluded we lacked personal jurisdiction over Mr. Beanland's claim in Pennsylvania, declined to exercise pendent personal jurisdiction over Mr. Beanland's claim, and declined to transfer Mr. Beanland's claim to a District with personal jurisdiction. *Travers v. FedEx Corp.*, 584 F. Supp. 3d 1 (E.D. Pa. 2022). Mr. Travers voluntarily dismissed his action against FedEx (ECF No. 99). Mr. Beanland then filed this case as we can exercise personal jurisdiction over FedEx as a Delaware citizen.

Mr. Beanland's counsel swears the parties exchanged written discovery, deposed five FedEx employees designated as Rule 30(b)(6) witnesses, and produced leave policies and data in the *Travers* action. Declaration of C. Downes, D.I. 64 ¶ 2. Attorney Downes swears the parties agreed to use certain discovery taken in *Travers* to streamline discovery and the parties took additional discovery in this case including the exchange of further requests for the production of documents and interrogatories, policy materials, and additional data pertaining to the dates of military leave taken by members of the putative Class and took the deposition of Mr. Beanland in this action. *Id.* D.I. 64 ¶ 3.

4. Mr. Beanland moved for class certification on October 14, 2022.[6] FedEx opposed class certification, arguing the proposed class is overbroad and should be limited to aircraft mechanics only.[7] We held oral argument on December 2, 2022 on the motion for class certification.

5. Mr. Beanland served a written demand on FedEx on December 7, 2022 consistent with our Scheduling Order. FedEx agreed, for settlement purposes, to provide counsel with wage and salary data necessary to calculate damages of the putative class.[8] We amended our Scheduling Order to extend the time for FedEx to respond to Mr. Beanland's written settlement demand.[9]

6. The parties then agreed to an all-day, in-person mediation session with an independent mediator on January 11, 2023.[10]

7. We held a conference call with counsel on January 20, 2023. Consistent with the parties' obligations to further their good faith settlement negotiations, and with counsel reporting progress allowing them to reach a settlement before we issued an order on Mr. Beanland's pending motion to certify a class, we amended our Scheduling Order to extend Phase 2 fact and expert discovery.[11]

8. On January 31, 2023, counsel advised the parties reached a settlement in principle on an amount and essential terms on an amount of recovery for the putative Class and agreed

---

[6] D.I. 43.

[7] D.I. 45.

[8] D.I. 52; D.I. 93 at 3.

[9] D.I. 53.

[10] D.I. 64–1 at 1, ¶ D; D.I. 94, Declaration of R. Joseph Barton in Support of Plaintiff's Motion for Final Approval, ¶ 3.

[11] D.I. 57.

attorney's fees and costs to be settled separately outside of the Class settlement.

### *We preliminarily approved a class settlement.*

9. We granted the parties leave to move for preliminary approval of a class action settlement, approval of class notice, preliminary approval of a proposed plan of allocation, and for an award of attorney's fees and costs by March 1, 2023.[12]

10. Mr. Beanland's counsel advised us on February 24, 2023: (1) the parties agreed to seek costs of settlement administration and notice to the proposed class from the settlement fund as well as distribution costs for the first distribution in an amount no greater than $25,000; (2) the parties failed to resolve the amount of attorney's fees and costs to be paid by FedEx but continued to work on resolution.[13]

11. Mr. Beanland moved for preliminary approval of the Class Action Settlement on March 1, 2023, including the Class Action Settlement Agreement.[14] No party opposed.

12. We held a noticed hearing on March 30, 2023 on Mr. Beanland's unopposed Motion for preliminary approval of Class Action Settlement and preliminarily approved the Settlement Agreement.[15]

13. The proposed Class Action Settlement Agreement resolves the Settled Claims against FedEx under the Uniformed Services Employment and Reemployment Rights Act asserted in the Complaint.

---

[12] D.I. 58.

[13] D.I. 61.

[14] D.I. 62, 64–1.

[15] D.I. 70.

14. The Settlement Agreement provides, in exchange for the dismissal of the Action and release of claims, FedEx will pay a **Cash Settlement Amount of $1,500,000** into an Escrow Account, to be allocated to Authorized Claimants under the Plan of Allocation defined to allow greater recovery for those with more leave but ensuring every person subject to the release will receive monetary compensation.[16]

15. We preliminarily certified a Settlement Class on behalf of:

> **Current and former permanent, non-pilot, United States employees of Federal Express Corporation ("FedEx") who took short-term military leave (periods of 14 days or fewer) from their employment with FedEx at any time from December 24, 2010 through December 31, 2022, and during that short-term military leave were not paid the compensation they would have earned had they continued to work their ordinary work schedules for FedEx.**
>
> **Excluded from the Class are all former or current salaried employees of FedEx who have only worked at FedEx after October 31, 2020.**[17]

16. We appointed Darren Beanland as Class Representative for the Settlement Class and Attorneys R. Joseph Barton of Barton & Downes LLP and Michael Scimone of Outten & Golden LLP and the attorneys at Barton & Downs LLP and Outten & Golden LLP as Class Counsel for the Settlement Class.[18]

17. We appointed Simpluris, Inc. as the Settlement Administrator to administer the settlement.[19]

---

[16] D.I. 64–1, 64–2.

[17] D.I. 70 ¶ 14.a.

[18] D.I. 70 ¶¶ 15–16.

[19] D.I. 70 ¶ 18.

18. We approved the Notice of Pendency of Class Action and Proposed Settlement as revised based on our March 30, 2023 preliminary approval hearing.[20]

19. We ordered Simpluris, Inc., to email or mail Notice consistent with the Settlement Agreement and arrange the settlement website no later than May 10, 2023. We ordered Simpluris, Inc. to conduct an advanced address research, by skip-trace databases, to identify current mailing address information for each Class Member for whom it received Notice is undeliverable and required Simpluris, Inc. to update the Class Member address information using data from the National Change of Address database and again mail the Notice to any Class Member whose address shown on the National Change of Address database differs from the undeliverable address.[21]

20. Following our approval of notice, Mr. Beanland filed a Notice of Filing of Joint Declaration of Class Counsel and Settlement Administrator regarding Class Notice.[22] Class Counsel Downes and Senior Project Manager Lindsay Kline swore Simpluris, Inc. completed class notice to the Class in accord with our March 30, 2023, May 4, 2023, and May 18, 2023 Orders,[23] created a settlement website and posted the Class Notice to it, and provided an individualized estimate of settlement proceeds to 3,938 Class Members of the total 4,016 persons identified as Class members initially provided Notice by first class mail.[24]

---

[20] D.I. 70 ¶ 24.

[21] *Id.*

[22] D.I. 77.

[23] D.I. 70, 74, 76.

[24] D.I. 77–1, Joint Declaration of Colin M. Downes and Lindsay Kline Regarding Class Notice.

*We identify 4,020 Class Members.*

21. Settlement Administrator Simpluris provided Class Notice by first class U.S. mail to 4,016 persons on the Class list provided to Simpluris by Class Counsel. It learned of nine additional Class Members by July 11, 2023.[25] It later learned five of the new nine members are not eligible for recovery.

22. The postal service returned thirty-three Notices sent by First Class Mail as undeliverable as of July 14, 2023.[26]

23. The Settlement Administrator also provided duplicative Class Notice by email to 781 persons (out of the 4,025 persons receiving mail notice) on the Class list provided to Simpluris by Class Counsel based on email addresses known to FedEx.[27]

24. Class Counsel repeatedly represented no more than thirty-three of the 4,025 class notices have not been timely delivered at our Final Approval Hearing. Class Counsel repeatedly represents the value of the damages owed to the Class from the $1.5 million Settlement Fund is not material to the fairness of the settlement terms given the Plan of Allocation.

25. There are a total of 4,020 identified Class Members.[28]

26. There are no objections to the Settlement from Class Members.[29]

---

[25] D.I. 95, Declaration of Lindsey Kline, ¶ 9.

[26] *Id.* ¶ 8.

[27] *Id.* ¶ 7.

[28] *Id.* ¶ 10.

[29] *Id.* ¶ 14.

*The Class and Notice satisfies Rule 23.*

27. We certify the Settlement Class on all claims under Fed. R. Civ. P. 23(a), (b)(2) as:

Current and former permanent, non-pilot, United States employees of Federal Express Corporation ("FedEx") who took short-term military leave (periods of 14 days or fewer) from their employment with FedEx at any time from December 24, 2010 through December 31, 2022, and during that short-term military leave were not paid the compensation they would have earned had they continued to work their ordinary work schedules for FedEx. Excluded from the Class are all former or current salaried employees of FedEx who have only worked at FedEx after October 31, 2020.

Excluded from the Class are all former or current salaried employees of FedEx who have only worked at FedEx after October 31, 2020.[30]

28. The Class Representative acted independently and Class Representative and Class Counsel fairly and adequately represented the Class in connection with the litigation and Settlement.

29. The Settlement arises from a genuine controversy between the parties and is not the result of collusion, nor was the settlement procured by fraud or misrepresentation.

30. This Settlement forever releases and discharges all Settled Class Claims against all Settling Parties upon a Final Non-Appealable Order, i.e., thirty-one days after the entry of this Order if not appealed. [31]

---

[30] The Class is as preliminarily approved on March 30, 2023 (D.I. 70). We review the Settlement Class at this stage. Rule 23(a) sets four requirements for certification of a class action: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). The Settlement Class satisfies the Rule 23 requirements: (1) the Class consists of over forty members; (2) the Class shares the common question challenging FedEx's failure to pay Plaintiffs and other employees with the same rights and benefits when they took short-term military leave as those offered to employees who took other, non-military forms of leave; (3) the "interests of the class and the class representative aligned" on the same facts and legal theories; and, (4) Class Counsel has proven to be qualified, experienced, and generally able to conduct the proposed litigation and the Class Representative's interests are not antagonistic to the Class. *See In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 426-435 (3d Cir. 2016).

[31] D.I. 64–1, Class Action Settlement Agreement § XIV.1.

31. Upon a Final Non-Appealable Order (thirty-one days after docketing this Order if not appealed), the Class Representative, all Class Members, Class Counsel, including their heirs, executors, administrators, successors, and assigns, fully and finally release Federal Express Corporation, its past, present, and future officers, directors, shareholders, members, affiliates, independent contractors, agents, insurers, insurance administrators, employees, attorneys, fiduciaries, trustees, heirs, administrators, executors, devisees, conservators, representatives, parents, subsidiaries, predecessors-in-interest, successors-in-interest, trusts, spouses, and assigns, from any and all claims, or causes of action, whether in law or in equity, whether known or unknown, whether fixed or contingent, existing before the date of the execution of the Class Action Settlement Agreement and consist of the claims set forth in the Complaint by the Class Representative on behalf of the Class or the claims the Class Members have based on or arising out of the same factual predicate as those claims, *except* the Class Representative individually and on behalf of himself and the Class and Class Counsel do not release any claims for attorney's fees, costs or other expenses.

32. Upon a Final Non-Appealable Order (thirty-one days after docketing this Order if not appealed), Federal Express Corporation fully and finally releases the Class Representative, each Class Member, and Class Counsel (including those working at Class Counsel's direction) from any and all claims or causes of action, whether in law or in equity, known or unknown, Federal Express Corporation has or had against the Class Representative, each Class Member, Plaintiff's Counsel (and any attorneys of those firms), and Class Counsel relating to the filing, commencement, prosecution, or settlement of this Action, including any claims for attorney's fees, costs, expenses, or sanctions.

33. The Settling Parties are not releasing claims to enforce the Settlement Agreement and the Class Representative, Class, and Class Counsel are not releasing claims for attorney's fees or expenses, including attorney's fees and expenses incurred in asserting claims in this litigation.

34. After applying each of the factors reaffirmed by our Court of Appeals in *In re Nat'l Football League Players Concussion Injury Litigation*, we approve the Class Action Settlement Agreement and find the settlement fair, reasonable, and adequate to all members of the Class.[32]

---

[32] When determining whether a proposed class action settlement is fair, reasonable, and adequate, we consider nine factors: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 437 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)).

The first factor supports settlement because this action involved complex questions under the Uniformed Services Employment and Reemployment Rights Act, including how we compare leaves under the Act. This question is made more complicated by several recent cases in courts around the country addressing unpaid short-term military leave claims under the Act and the proper comparison of employees in the "same work group." Continued litigation of these issues would have resulted in significant expense but for the settlement, including questions raised as to class certification. The second factor supports settlement because the Class responded overwhelmingly favorably to the settlement and there are no objectors. The third factor supports settlement because the parties reached settlement after litigating this matter extensively over a period of several months as demonstrated in the extensive time records provided by counsel. The fourth factor supports settlement because the Class Representative faced significant risk in class certification and in establishing a claim on a Class–wide basis and this settlement provides relief to over 4,000 current and former permanent, non-pilot employees of FedEx which otherwise would have involved a substantial risk of establishing liability. The fifth factor supports settlement given the significant risk of establishing these damages and advancing arguments under the developing law in federal courts. The sixth factor also militates in favor of approval as settlement precludes the risk associated with trial and the multiple class certification and evidentiary challenges. The seventh factor weighs in favor of settlement mindful FedEx may have been able to sustain a greater judgment, but it may be difficult to establish damages at a greater number across the board. The eighth and ninth factors support a finding of a reasonable, fair, and adequate settlement considering the risks faced by the Plaintiff and pursuing a settlement fund of this amount and a separate recovery for attorney's fees.

35. We authorize and direct implementation and performance of all the terms and provisions of the Class Action Settlement Agreement, as well as the terms and provisions hereof.

36. The Class satisfies Fed. R. Civ. P. 23(a) and is maintainable under Rule 23(b)(2). We certify the Class for purposes of settlement.

37. The Notice approved by this Court and provided to all members of the Class satisfies Fed. R. Civ. P. 23(e)(1) including through mailing to all potential Class Members, emails to known email addresses, and on the Settlement Administrator's website adequately informed Class Members the terms of the Settlement and the procedure to object to the Settlement, and to be heard at our Final Approval Hearing.[33]

38. The Class Action Settlement Agreement will not: (a) be interpreted or deemed to constitute any finding of wrongdoing by Defendant or give rise to any inference of liability in this or any other proceeding; (b) be offered or received against Defendant as any admission by any such Party with respect to the truth of any fact alleged by Plaintiff or the validity of any claim asserted in the Action or of any liability, negligence, fault, or wrongdoing of any such Party; and (c) be deemed to be or used as an admission or evidence of, any infirmity in the claims asserted by Plaintiff and Class Members.[34]

39. The Settlement Agreement may be used to enforce the Settlement Agreement or Final Approval Order, and a Party may file this Settlement Agreement and/or the Final Approval Order in an action brought against the Party to support a claim, defense, or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar, or

---

[33] D.I. 77–1, Joint Declaration of Colin M. Downes and Lindsay Kline Regarding Class Notice and attached Notices.

[34] D.I. 64–1, Class Action Settlement Agreement §§ IX. 1., 2.

reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim, or in any action brought to enforce any claim assigned under the Settlement Agreement.[35]

40. The Plan of Allocation as described in the Court-approved Notices sent to Class Members is fair and provides a reasonable basis upon which to allocate the proceeds among Class Members, with due consideration given to administrative convenience and necessity.

41. FedEx timely complied with the Class Action Fairness Act of 2005, 28 U.S.C. § 1711, *et seq.*, and provided Notice consistent with the Act and Settlement Agreement, notified the appropriate state and federal officials as provided by section 1715 of the Act.[36]

42. No members of the Class other than the Class Representative travelling from Indiana attended the Final Approval Hearing to raise objections, advance questions, or oppose the settlement.

43. Class Counsel and the Claims Administrator shall post this Order on the Settlement Website to remain open until at least sixty days after our final Order approving the final distribution of funds from the Net Settlement Fund.

### *We approve Plaintiff's Counsel's requested fee and costs.*

44. Under the terms of the Agreement Regarding Attorney's Fees, Litigation Expenses, and Costs, Class Action Settlement Agreement, Class Counsel and FedEx agreed to the payment of attorney's fees, costs, and expenses in the amount of $910,000 into an escrow account representing $850,000 in attorney's fees and $60,000 in litigation expenses and/or costs to be paid

---

[35] *Id.* § 3.

[36] D.I. 96–1, Declaration of C. Hitch Wilson.

in addition to and separate from the Cash Settlement Fund paid to the Class Members.[37] The Agreement does not include amounts to be paid for Notice and Settlement Administration expenses to be paid out of the Cash Settlement Fund.

    45.    Class Counsel provided highly competent representation for the Class.

    46.    We award $850,000 in fees and $60,00 in demonstrated expenses from the $910,000 in escrow separate from the Cash Settlement Fund. These fees and costs shall be paid to Class Counsel no sooner than the initial distribution to the Class and otherwise consistent with the Agreement Regarding Attorney's Fees, Litigation Expenses, and Costs.

    a.    Exercising our discretion, we conduct a "thorough judicial review" to determine the amount of any award to counsel.[38] "Judicial deference to the results of private negotiations is undoubtedly appropriate for many settlements, but not for class action settlements, including their attorney fee terms. 'That the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief provided to the class in the agreement does not detract from the need carefully to scrutinize the fee award.'"[39]

    b.    We scrutinize a fee request separate from the compensation paid to the Class to ensure Class Counsel is not obtaining a percentage recovery which it could not otherwise obtain

---

[37] D.I. 83–3, § I.1. Class Counsel last week submitted a Notice of supplemental fees and expenses in support their Motion for attorney's fees and costs with supporting Declarations of Attorneys Barton and Scimone. D.I. 97, 98, 99. As of July 28, 2023, Mr. Barton's firm expended an additional $2,329.10 in expenses and $30,162.50 in attorney's fees and Mr. Scimone's firm expended an additional $722.49 in expenses and $30,457.50 in attorney's fees. *Id.*

[38] *In re Diet Drugs*, 582 F.3d 524, 637–38 (3d Cir. 2009) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995)).

[39] *In re Southwest Airlines Voucher Litig.*, 799 F.3d 701, 713 (7th Cir. 2015) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003)).

if we considered the entire compensation. We view the entire compensation as one compromise. We find the total compensation of $850,000 is appropriate after applying our reasonableness factors.

    c. Class Counsel conducted extensive investigation, research, focused discovery and evaluated respective risks of further litigation, including the risk of decertification of the certified class, additional costs, and delay associated with further prosecution of this action. The parties reached the agreement through arm's length settlement negotiations leading to the settlement, and, ultimately the Class Action Settlement Agreement. Class Counsel's fees are reasonable and necessary for the benefit of the Class.[40]

---

[40] We consider seven factors to analyze the reasonableness of the requested fee: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; and (7) the awards in similar cases.

As to the first factor, the Cash Settlement Amount fully addresses the claims under the approved Class Action Settlement Agreement providing an immediate benefit to each Class Member. The second factor supports the proposed fee because there were no objectors. The third factor supports the proposed fee as Class Counsel possesses substantial experience in class action litigation, including employment and class action litigation including the Uniformed Services Employment and Reemployment Rights Act cases. Class Counsel secured a monetary benefit to the Class. The fourth factor supports the proposed fee because the federal statute at issue is complex, required motion practice, substantial discovery, and a negotiated settlement in an area of the law currently litigated around the country. Litigation of these issues would have likely resulted in an increasing and significant expense but for the Settlement. The fifth factor supports the proposed fee as Class Counsel undertook this representation understanding Mr. Beanland did not owe fees unless Class Counsel recovered. The sixth factor supports the proposed fee because Class Counsel along with assistant counsel invested approximately 1,817 hours prosecuting this litigation at hourly rates of approximately $280 to $325 per hour for paralegals; $425 to $850 for associates; and $550 through $1,150 per hour for partners. D.I. 84, 86, 87, 88, 89, 90, 91. Our approval today does not equate to a finding these hourly rates are the fair rates in this District but no Class Member objects and even if we were to redline the hourly rates based on fees in this District, Class Counsel have shown an

    d.  As a cross-check, we reviewed Plaintiff Counsel's lodestar of $1,108,130.84 in employment law cases and $1,117,644.51 based on the fee schedule established by Community Legal Services of Philadelphia.[41] The lodestar represents total hours of work through June 28, 2023. An award of $850,000 in attorney's fees represents approximately 76.7% of the lower end $1,108,130.84 lodestar and 76% of the higher end $1,117,644.51 lodestar.

    e.  This requested fee is substantially less than the lodestar.[42]

  47.  We award $850,000 in attorney's fees to Class Counsel defined in our March 30, 2023 Order (D.I. 70) as R. Joseph Barton of Barton & Downes LLP and Michael Scimone of Outten & Golden LLP.

  48.  Class Counsel repeatedly represented during our final approval hearing of having resolved all claims among the attorneys working on the matter for the Class and no counsel will place a lien on the attorney's fees to be shared by Class Counsel as agreed.

  49.  We award $60,000 to reimburse Class Counsel for demonstrated reasonable out of pocket and additional costs necessary to be incurred by Class Counsel to be paid as part of the $910,000 in escrow to pay reasonable fees and costs.

### *We approve the payment of a Service Award to Mr. Beanland.*

  50.  We approve a service award of $10,000 to Mr. Beanland for his time and effort, finding it to be fair and reasonable for his efforts on behalf of Class Members. This award shall be paid from the Cash Settlement Fnnd.

---

approximate one-third recovery is appropriate for their efforts in this difficult case. The seventh factor supports the proposed fee as consistent with fee awards in this District.

[41] D.I. 88, Declaration of M. Scimone, ¶¶ 40–42.

[42] Since filing their Motion for attorney's fees and reimbursement of expenses on June 28, 2023 (D.I. 82), Class Counsel expended an additional $60,620 in attorney's fees. D.I. 97, 98, 99.

51.     Mr. Beanland remained an employee of FedEx during this litigation and continuing to date. He took on risk in bringing this case against FedEx. He actively participated in the case having been twice deposed, produced documents, responded to interrogatories, worked with Class Counsel, participated in the mediation, and attended our Final Approval Hearing.[43] Mr. Beanland estimated he spent at least forty hours on this case, including reviewing the complaints, reviewing discovery requests and responses, telephone calls with counsel, reviewing and responding to emails with counsel, attending his depositions, deposition preparation and document searches. He swears his current hourly rate is $53.77 and assumes 40 hours at his hourly rate amounts to over $2,200.[44]

52.     Class Counsel shall pay the Service Representative Fee from the Cash Settlement Fund of $1,500,000 contemporaneous with the Initial Distribution to the Class Members.

### *We approve the payment to Settlement Administrator Simpluris, Inc.*

53.     We award no more than $25,000 from the $1,500,000 Cash Settlement Fund for reimbursement of fees and expenses incurred in administration services through the first distribution of funds to the Class Members.

54.     Class Counsel and the Settlement Administrator shall not be paid until completing the first distribution to Class Members.

### *We approve the Plan of Allocation.*

55.     We approve the Plan of Allocation of the Net Settlement Fund of $1,500,000.00 to be allocated *pro rata* among the Authorized Claimants based on the Recognized Claim for each

---

[43] D.I. 80, Declaration of D. Beanland.

[44] *Id.* ¶ 9.

Class Member as compared to the total Recognized Claims for all Plan accounts for all Authorized Claimants.[45]

56.   A first distribution to Authorized Claimants will be made by check issued by the Claims Administrator within sixty days of a Final Order becoming non-appealable.

57.   The check paid to the Class Member will be valid for ninety days from the date of issue.

### *Obligations following first distribution.*

58.   A second distribution will be made to Authorized Claimants who endorsed their Initial Distribution checks within ninety days after issuance from the Initial Distribution only if, after the Initial Distribution, the Net Settlement Fund contains or subsequently has sufficient monies to pay the costs of administering a second distribution to Authorized Claims and a second distribution is otherwise economically feasible.

59.   Class Counsel shall not authorize further payments from the Net Settlement Fund for payment to the Settlement Administrator absent further Order.

60.   Any funds remaining in the Net Settlement Fund after the Initial Distribution and the Second Distribution, or if no Second Distribution, after the Initial Distribution, and after all taxes and other expenses have been paid, the residual amounts will be subject to a *cy pres* recipient following a motion recommending a recipient supporting our military in transition and employment opportunities.

61.   Class Counsel shall, on or before **December 1, 2023**, file a Notice detailing the status of distribution and, if then warranted, move for *cy pres* distribution. We will require further periodic status Notices until Class Counsel can timely file a Notice of final distribution.

---

[45] D.I. 64–2, ¶ 3.

*We dismiss the claims.*

62.	The claims of all Class Members based on or arising out of any acts, facts, transactions, occurrences, representations, or omissions which are alleged, or which could have been alleged, in the Class Action Complaint, on the merits are **dismissed with prejudice** and without costs to any of the parties as against any other settling party, except as provided in the Class Action Settlement Agreement.

63.	The Clerk of Court shall **close this case** retaining jurisdiction only to enforce this Order.

_____
**KEARNEY, J.**